KROLL RESTRUCTURING ADMINISTRATION LLC
Benjamin J. Steele
Gabriel Brunswick
Kroll Restructuring Administration LLC
55 East 52nd Street, 17th Floor
New York, New York 10055
Phone: (212) 257-5450
benjamin.steele2@kroll.com
gabriel.brunswick@kroll.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCON B.V., | Case No. 23-11947 (MEW) |
| Debtor. | |

### CHAPTER 11 ADMINISTRATIVE EXPENSE PROOF OF CLAIM AND REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE

1.      Kroll Restructuring Administration LLC ("Kroll"), whose headquarters are located at 55 East 52nd Street, 17th Floor, New York, New York 10055, hereby files this *Chapter 11 Administrative Expense Proof of Claim and Request for Payment of Administrative Expense* (the "Administrative Claim")[1] seeking payment in the amount of $348,533.35 (the "Administrative Claim Amount") as an administrative expense of the Debtors' (as defined below) estates pursuant to sections 503(b)(1)(A) and 503(b)(2) of title 11 of the United States Code (the "Bankruptcy Code").  The undersigned is duly authorized by Kroll to file this Administrative Claim.  In support of the Administrative Claim, Kroll respectfully states as follows:

---

[1] Kroll has concurrently filed a final fee application for payment of fees and expenses incurred in its capacity as administrative advisor, which for the avoidance of doubt are outside of the scope of this Administrative Claim.

## **Background**

2.      On December 6, 2023 (the "Petition Date"), Mercon Coffee Corporation and its affiliates (collectively, the "**Debtors**") commenced with the Court a voluntary case under chapter 11 the Bankruptcy Code. The Debtors were authorized to continue to operate their business and. manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. On December 21, 2023, an official committee of unsecured creditors was appointed in these cases [Docket No. 74].[2]

3.      On December 13, 2023, the Court entered the *Order Authorizing Retention and Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent,* [Docket No. 57] (the "Retention Order"), which authorized the Debtors to retain Kroll as the claims, noticing and solicitation agent (the "Claims and Noticing Agent") in the Debtors' chapter 11 cases.  As Claims and Noticing Agent, Kroll was authorized to perform claims, noticing, solicitation and other administrative services in the Debtors' chapter 11 cases as set forth in the Retention Order and in that certain Kroll Restructuring Administration LLC Engagement Agreement, entered into as of November 16, 2023 (the "Engagement Agreement").  True and correct copies of the Retention Order and the Engagement Agreement are attached hereto as **Exhibit A**, and **Exhibit B**, respectively.

4.      On July 30, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [Docket No. 690], which among other things confirmed the *Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee*

---

[2] Docket references herein are to the chapter 11 case of Mercon Coffee Corporation, Case No. 23-11945.

*Corporation and Certain Affiliated Debtors*, dated May 22, 2024 [Docket No. 516] (as it has been

and may be amended, altered, modified, revised or supplemented from time to time, the

"Plan").  On August 6, 2024, the Debtors filed the *Notice of (I) Occurrence of Effective Date

and (II) Administrative Claims Bar Date* [Docket No. 706], which among other things provided

notice that the Plan became effective on July 31, 2024 (the "Effective Date").

5.      Kroll maintained computerized records of the time spent by employees of Kroll

in connection with its role as Claims and Noticing Agent, which have been or will be provided

to the appropriate parties in accordance with the Retention Order.  Below is a summary of the

unpaid invoices comprising the Administrative Claim Amount:

| Invoice Date | Invoice Number | Amount Outstanding |
|---|---|---|
| 6/30/2024 | 24684 | $313,142.27 |
| 7/31/2024 | 24938 | $35,391.08 |
| | **Total Due/ Administrative Claim Amount** | $348,533.35 |

6.      While Kroll is typically paid in full for all outstanding invoices incurred in its

capacity as Claims and Noticing Agent between the Petition Date and the Effective Date in the

ordinary course and prior to or shortly after the Effective Date, the Administrative Claim

Amount still has not been paid as of the date hereof.

**The Administrative Claim Amount is an
Administrative Expense of the Debtor's Estate**

7.      The Administrative Claim Amount is clearly an administrative expense of the

Debtors' estates pursuant to the terms of the Retention Order, 28 U.S.C. §156(c), and sections

503(b)(1)(A) and 503(b)(2) of the Bankruptcy Code.

8.    The Retention Order provides that "Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Kroll under this Order shall be an administrative expense of the Debtors' estates." Retention Order ¶ 8.

9.    Moreover, section 503(b)(1)(A) of the Bankruptcy Code provides, in relevant part, that a claimant is entitled to an administrative claim for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

10.    Based on the foregoing and the clear benefits to the Debtors' estates from the services provided by Kroll, Kroll submits that payment of the Administrative Claim Amount as an administrative expense pursuant to sections 503(b)(1)(A) and 503(b)(2) of the Bankruptcy Code is appropriate.

## Reservation of Rights

11.    In executing and filing this Administrative Claim, Kroll expressly preserves and does not waive (i) any of its rights and remedies against any other person or entity who may be liable for all or part of the claims set forth herein, whether an affiliate of the Debtors, an assignee, guarantor, or otherwise, and/or (ii) any right to seek to withdraw the reference or obtain a jury trial with respect to the subject matter of this Administrative Claim or any objection, counterclaim or other proceeding commenced with respect thereto.  The filing of this Administrative Claim is not and shall not be construed to be an election of remedies.

12.    Kroll expressly reserves the right to modify, amend and/or supplement this Administrative Claim in any respect at any time.

13.    No judgment has been rendered on the Administrative Claim.

14.    Nothing stated in this Administrative Claim should be construed as an admission by Kroll as to any matter, including any obligation or liability, and Kroll expressly reserves all of its rights and defenses with respect to any such matter.

15.    All notices with respect to the Administrative Claim should be sent to:  Kroll Restructuring Administration LLC, 55 East 52nd Street, 17th Floor, New York, New York 10055, Attention:  Benjamin J. Steele & Gabriel Brunswick, benjamin.steele2@kroll.com, gabriel.brunswick@kroll.com.

WHEREFORE, Kroll hereby asserts and requests immediate payment of the Administrative Claim Amount.

Dated:  August 30, 2024
New York, New York

Kroll Restructuring Administration LLC

/s/ Benjamin J. Steele
Benjamin J. Steele
Gabriel Brunswick
Kroll Restructuring Administration LLC
55 East 52nd Street, 17th Floor
New York, New York 10055
Phone: (212) 257-5450
benjamin.steele2@kroll.com
gabriel.brunswick@kroll.com

## Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*In re*                                                     Chapter 11

MERCON COFFEE CORPORATION, *et al.*,[1]          Case No. 23-11945 (MEW)

      Debtors.

_____/

### ORDER AUTHORIZING RETENTION AND APPOINTMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT

Upon the application dated December 7, 2023 [Doc. No. 18] (the "**Section 156(c) Application**") of the debtors and debtors in possession (the "**Debtors**"), for retention and appointment of Kroll Restructuring Administration LLC ("**Kroll**")[2] as claims and noticing agent ("**Claims and Noticing Agent**") pursuant to 28 U.S.C. §156(c), section 105(a) of the Bankruptcy Code[3] and Local Rule 5075-1 to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket and otherwise administer the proofs of claim filed in the Debtors' chapter 11 cases and (iii) provide such other services as would otherwise fall within the purview of services to be provided by the Clerk's office; and upon the Steele Declaration submitted in support of the Section 156(c) Application; and the Debtors having estimated that there are in excess of 14,000 creditors in these Chapter 11 Cases, many of which are expected to file proofs of claim; and it appearing that the receiving, docketing and maintaining of proofs of claim would be

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC. There has not been any change in the company's leadership, ownership, or organizational structure.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that Kroll has the capability and experience to provide such services and that Kroll does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and good and sufficient notice of the Section 156(c) Application having been given and no other or further notice being required; and it appearing that the employment of Kroll is in the best interests of the Debtors, their estates and creditors; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED**:

1. Notwithstanding the terms of the Engagement Agreement attached to the Section 156(c) Application, the Section 156(c) Application is approved solely as set forth in this Order.

2. The Debtors are authorized to retain Kroll as Claims and Noticing Agent effective *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and Kroll is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in the Chapter 11 Cases as provided in 28 U.S.C. § 156(c).

3. Kroll shall serve as the interim custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk who remains the official custodian of court records under 28 U.S.C. § 156(e).

2

4.    Kroll is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.    The Debtors are authorized to compensate Kroll in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Kroll and the rates charged for each, and to reimburse Kroll for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Kroll to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

6.    Kroll shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.

7.    The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

8.    Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Kroll under this Order shall be an administrative expense of the Debtors' estates.

9.    Kroll shall apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter (unless otherwise ordered by the Court) Kroll may hold its advance under the Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

10.     The Debtors shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

11.     All requests by Kroll for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court, and to which the United States Trustee shall have the opportunity to object, to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided however*, that in no event shall Kroll be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

12.     In the event that Kroll seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Kroll's own applications, both interim and final, but determined by this Court after notice and a hearing.

13.     Notwithstanding anything in this Order, the Section 156(c) Application, or the Engagement Agreement to the contrary, the sections on limitation of liability and arbitration in paragraphs 10 and 15, respectively, of the Engagement Agreement are deemed to be of no force or effect with respect to the services provided pursuant to this Order.

14.     In the event Kroll is unable to provide the services set out in this order, Kroll will immediately notify the Clerk and the Debtors' attorney and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

15.     The Debtors shall submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Kroll but is not specifically authorized by this Order.

16.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

17.     Kroll shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of this Court.

18.     At the end of a case or upon termination of Kroll's services, the Debtors must obtain a termination order to terminate the services of Kroll.  Kroll is responsible for archiving the claims with Federal Archives Administration, if applicable.

19.     The Debtors and Kroll are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

20.     In the event of any inconsistency between the Engagement Agreement, the Section 156(c) Application, and the Order, the Order shall govern.

21.     This Court shall have exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order and over any dispute relating to the fees payable to Kroll or the services performed by Kroll.  Any provision of the Engagement Agreement that calls for arbitration of any such dispute, or that confers jurisdiction on any other court with respect to any such dispute, is not approved and shall not be applicable.

Dated: New York, New York
      December 13, 2023

                                        /s/ **Michael E. Wiles**
                                        HONORABLE MICHAEL E. WILES
                                        UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**



## Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of November 16, 2023 between Kroll Restructuring Administration LLC ("***Kroll***") and Mercon Coffee Corporation (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

   (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder.  The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Kroll will provide a discount of 15% off the attached hourly rates.  The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c) Kroll will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $50,000.  Kroll may use such advance against unpaid fees and expenses hereunder.  Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

**3.   Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.   Confidentiality**

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



5.  **Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

6.  **Bank Accounts**

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that such accounts or other financial products are provided to the Company, pursuant to Kroll's agreement(s) with financial institutions, Kroll may receive fees and other compensation from such institutions.

7.  **Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b)  If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d)  If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8.  **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9.  **Indemnification**

    (a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b)  Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c)  The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

    (d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.  **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.  **Company Data**

    (a)  The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b)  The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

    (c)  Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the



Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d)  If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e)  Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment</u>

(a)  Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17.  Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18.  Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  | |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC |
| | 55 East 52nd Street, 17th Floor |
| | New York, NY 10055 |
| | Attn:    Legal Department |
| | Tel:    (212) 257-5450 |
| | Email:  Legal@kbs.kroll.com |
| | |
| If to the Company: | Mercon Coffee Corporation |
| | 999 Ponce de Leon Blvd. STE 910 |
| | Coral Gables, FL 33134 |
| | Attn: Finance Department |
| | Tel: (786)-254-2300 |
| | Email: finance@merconcoffee.com |
| | |
| With a copy to: | Baker & McKenzie LLP |
| | 452 Fifth Avenue |
| | New York, NY 10018 |
| | Attn:    Blaire Cahn |
| | Tel:    (212) 626-4695 |
| | Email:  blaire.cahn@bakermckenzie.com |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By:  Shira Weiner
Title:  General Counsel

**Mercon Coffee Corporation**

By:    Juan Pablo Ibarra
Title:  Chief Operating Officer, EVP



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claim and Noticing Rates | |
| --- | --- |
| **TITLE** | **HOURLY RATE** |
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $60 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $110 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Senior Consultants average over five years of experience. | $65 - $195 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Kroll Restructuring Administration will serve in this role at this rate. Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $245 |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
| --- | --- |
| Solicitation Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $220 |
| Director of Solicitation<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Kroll Restructuring Administration's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $245 |

## Printing & Noticing Services

| | |
| --- | --- |
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
| --- | --- |
| Coordinate and publish legal notices | Available on request |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Case Website | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |
| **On-line Claim Filing Services** | |
| On-line claim filing | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of EIN/TIN database | Standard rates |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106